IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                                    |   |                          |
|------------------------------------|---|--------------------------|
|                                    | * |                          |
| JENNIFER BULMER,                   | * |                          |
|    Appellant,       | * |                          |
|      v.   | * | CIVIL NO.: WDQ-13-1578   |
| DONALD STEWART BULMER, <br>    et al. | * |  |
|                                    | * |                          |
|    Appellees.       | * |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Jennifer Bulmer ("Ms. Bulmer"), through counsel, appealed orders of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") denying reconsideration of the denial of confirmation of her proposed Chapter 13 plan, denying her motion to stay the proceedings pending appeal, and granting the Chapter 13 Trustee's motion to convert the case to Chapter 7. ECF Nos. 1 at 1, 10-1 at 2. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the Bankruptcy Court's orders will be affirmed.

I. Background[1]

In 2006, Ms. Bulmer separated from her husband, Donald Stewart Bulmer ("Mr. Bulmer"). ECF No. 16 at 60. In their November 9, 2006 separation agreement, Ms. Bulmer agreed to pay Mr. Bulmer $90,000 within two and a half years of the date of the agreement in exchange for his interest in their marital home on Jones Lane in Dunkirk, Maryland (the "Dunkirk home"). *See id.* at 23, 61, 75. The agreement also prohibited Ms. Bulmer from borrowing more than $50,000 in a refinance of the Dunkirk home. *Id.* at 76. At the time, the Dunkirk home had an appraised value between $700,000 and $800,000. *See id.* at 61, 85-86. Sometime in 2006, with Mr. Bulmer's permission, Ms. Bulmer refinanced the Dunkirk home. *See* ECF No. 12-17 at 12-14.

On June 11, 2009, Mr. Bulmer filed for divorce in the Circuit Court for Prince George's County, Maryland, and the separation agreement was incorporated into the divorce judgment.[2] *See* ECF Nos. 16 at 60-61, 105, 112-13, 160; 20 at 3. Although Mr. Bulmer deeded his ownership of the Dunkirk home to Ms.

---

[1] The facts are taken from the original notice of appeal and accompanying exhibits, ECF No. 1, Ms. Bulmer's designation of the record and statement of issues, ECF No. 4, the amended notice of appeal and accompanying exhibits, ECF No. 10, the Chapter 13 Bankruptcy Trustee's designation of additional items to be included in the record, ECF No. 12, the hearing transcripts, ECF Nos. 16, 17, and the parties' briefs, ECF Nos. 19-21.

[2] The divorce judgment became final on March 8, 2010. ECF Nos. 19 at 1-2, 20 at 3.

2

Bulmer, she did not pay him any portion of the $90,000 payment. ECF No. 16 at 62, 104.

In 2009, in violation of the separation agreement, Ms. Bulmer refinanced the Dunkirk home again and borrowed about $100,000. *Id.* at 76, 88. She lived off the funds for at least the next two years. *See id.* at 88-89.

On January 25, 2010, Ms. Bulmer subdivided the land on which the Dunkirk home is located and deeded two unimproved lots--three and a half acres of land--to her two children.[3] ECF Nos. 12-17 at 10; 16 at 79, 147-48.

On May 8, 2010, Ms. Bulmer listed the Dunkirk home for sale. ECF No. 16 at 76. She initially asked for $599,000, but two months later lowered the asking price to $549,000.[4] *Id.* Sometime thereafter, Mr. Bulmer obtained a writ of execution authorizing the sale of the Dunkirk home to satisfy the $90,000 judgment. *See id.* at 89.

---

[3] The parties agree that Ms. Bulmer first contemplated subdividing her land, with Mr. Bulmer's permission, in 2005. *See* ECF No. 16 at 85, 117. Ms. Bulmer testified that the purpose of the subdivision was to enable her two children to build houses on the lots. *See id.* at 83. However, Mr. Bulmer testified that the purpose was to sell the lots. *Id.* at 117-18.

[4] Around the same time, Ms. Bulmer's sister--who lives across the street from the Dunkirk home and testified at a hearing on Ms. Bulmer's behalf--also tried to sell her home. ECF No. 16 at 95, 98. She listed the home for $539,000 initially and then later lowered the asking price to $479,000. *Id.* at 99-100. She received only one offer of $359,000, which she rejected. *Id.* at 100.

3

On December 14, 2010, after she was notified of Mr.
Bulmer's writ, Ms. Bulmer filed for Chapter 13 bankruptcy. *See
id.* at 77, 89. In her filing, she valued her home at $280,000.[5]
*Id.* at 77. She later raised the value to $350,000. *Id.* at 78-
79. She did not list the conveyances of the lots to her
children in her filing, even though the petition required her to
list recent gifts and transfers of property.[6] *See id.* at 87. On
June 2, 2011, after a hearing (the "2011 hearing"), Bankruptcy
Judge David E. Rice denied confirmation of Ms. Bulmer's Chapter
13 plan with leave to amend.[7] ECF No. 12-16 at 2-4. On
September 16, 2011, the bankruptcy case was dismissed. ECF No.
21 at 2.

On December 18, 2011, Mr. Bulmer obtained a second writ of
execution on the Dunkirk home. *See* ECF Nos. 16 at 89-90, 20 at
5. On January 20, 2012, Ms. Bulmer filed for Chapter 13

---

[5] On December 21, 2010--one week after she filed for bankruptcy--
Ms. Bulmer lowered the sale price for her home to $519,000. *See*
ECF No. 16 at 76. She did not receive any offers on the home.
*See id.* at 67.

[6] In other adversary proceedings filed by the Trustee in this
bankruptcy case, these transfers were avoided. *See* ECF Nos. 12-
8 at 1 n.1, 16 at 7-8.

[7] At the 2011 hearing, after considering the testimony of, *inter
alia*, Ronald Watson--a real estate agent and appraiser who was
qualified as an expert witness--Judge Rice found that the value
of the Dunkirk home was $460,000. *See* ECF No. 16 at 7, 125-26,
172. Based on this finding, Judge Rice concluded that "the plan
did not comply with the requirements of the best interests of
creditors test set forth in 11 U.S.C. § 1325(a)(4)." ECF No.
12-16 at 4.

4

bankruptcy again. ECF Nos. 16 at 90, 20 at 5. On June 22, 2012 the case was dismissed when Ms. Bulmer did not appear at the confirmation hearing. ECF No. 1-2 at 2 n.1.

On October 23, 2012, Mr. Bulmer obtained a third writ of execution. *See* ECF Nos. 16 at 89-90, 20 at 6. On November 20, 2012, Ms. Bulmer filed a third voluntary petition for bankruptcy and a proposed Chapter 13 plan. ECF No. 4-10 at 12. On March 24, 2013, Ms. Bulmer filed an amended Chapter 13 plan. ECF No. 4. Ellen W. Cosby, the Chapter 13 Bankruptcy Trustee (the "Trustee"), and Mr. Bulmer objected to the amended plan. ECF Nos. 4-1 at 1, 4-2. On March 27, 2013, the Bankruptcy Court, with Judge Rice presiding, held a hearing on the objections (the "March hearing"), at which Ms. Bulmer was represented by counsel. ECF No. 4-2.

At the hearing, Reginald Grice testified on Ms. Bulmer's behalf about the Dunkirk home's condition and the repairs the home required to be for sale. *See* ECF No. 16 at 18, 23. During the hearing, Grice was "qualified as an expert in construction and estimating repairs on residential properties." *Id.* at 21. After inspecting the Dunkirk home, Grice estimated that it required $104,624 in repairs. *Id.* at 27. To reach that estimate, Grice added, *inter alia*, the cost of replacing all 36 windows in the Dunkirk home ($52,700), the cost of replacing the septic system ($7,000 to $12,000) which another company had

5

evaluated and said was failing, and the cost of replacing the
carpet (several thousand dollars). *See id.* at 31-32, 34.
Although Grice acknowledged that only 15-20 percent of the 36
windows had failed, he testified that, because of their 20 year
age, the windows had exceeded their life expectancy. *See id.* at
35. He stated that he, along with many buyers, would not want
to buy the Dunkirk home unless all the repairs he had recomm-
ended were completed. *See id.* at 34.

Karen Suzanne Valentine, a residential real estate agent
with five years of experience, also testified on Ms. Bulmer's
behalf. *Id.* at 39-40. Valentine was qualified "as an expert in
home sales in distressed properties . . . that are sold in and
around Anne Arundel County, Maryland." *Id.* at 47-48. She
valued the Dunkirk home at $399,000, and testified that, in her
opinion, the repairs that Grice had identified would be required
to sell the home in a reasonable amount of time. *See id.* at 42-
44. She valued the Dunkirk home by researching recent sales of
comparable homes in the area, and then discounting because,
unlike the other homes, the Dunkirk home would not show well.
*See id.* at 45-46. She also noted that, although the real estate
market was shifting from a buyer's market to a seller's market,
buyers were "still getting closing [concessions] to the tune of
$10,000 to $12,000 or 3 to 4 percent of the value of the house."
*See id.* at 50, 153. Finally, she stated that, if the two lots

6

were not subdivided from the property, the value of the Dunkirk
home might increase "slight[ly]." *See id.* at 51.

Finally, Ms. Bulmer testified. *Id.* at 57. She stated her
opinion that the Dunkirk home was worth $399,000. *Id.* at 73.
She also acknowledged that she had filed each of her three
bankruptcy petitions in response to Mr. Bulmer's writs of
execution, that her previous two bankruptcy filings had been
dismissed, and that her proposed plans in each filing were
substantially similar. *See id.* at 89-91.

Mr. Bulmer and Ronald Watson testified at the March hearing
on behalf of Mr. Bulmer. *Id.* at 3. Watson--a real estate agent
and owner of an appraisal company with about 25 years of
residential appraisal experience--testified about his appraisal
of the Dunkirk home.[8] *See id.* at 125, 127. After looking at
comparable sales in the area, and analyzing the area's real
estate market, he valued the Dunkirk home at $530,000. *See id.*
at 132-33, 142-43. This valuation did not take into account
maintenance needs; he considered the Dunkirk home to be in
average condition and in need of some repairs. *Id.* at 128, 137.
He also stated, however, that the "expectation for the house to

---

[8] Although Watson testified that he had been qualified as an
expert in the 2011 hearing before Judge Rice, Mr. Bulmer's
lawyer did not move for his qualification as an expert in the
March hearing or move into evidence the appraisals Watson had
performed. *See* ECF No. 16 at 126-27, 156, 161.

7

have all new windows . . . is excessive" and replacing all the windows would not be required to sell the house. *Id.* at 149. Finally, on cross-examination, Watson lowered his initial estimates of the value of the two lots still attached to the property from $15,000 per acre to about $7,000 per acre, for a total of $24,500. *See id.* at 144-48.

After hearing the evidence, the Bankruptcy Court denied confirmation of the plan but gave Ms. Bulmer leave to amend by May 10, 2013. ECF Nos. 1-1 at 1, 16 at 171. The Court found that, based on her history of refinancings and bankruptcy filings, Ms. Bulmer had not filed her proposed plan in good faith and instead had filed "to frustrate the efforts of Donald Bulmer to collect on a perfectly valid judg[]ment." *See* ECF No. 16 at 171-72. The Court also credited Watson's testimony about the value of the Dunkirk home, finding that the home was worth $530,000. *Id.* at 173. Although an adjustment to the home's value for some repairs was necessary, the Court found that some of the repairs recommended by Grice were "over stated in the sense [that they] represented [a] desire to bring this property up to a near perfect condition." *See id.* at 173. In particular, the Court found that "only a small percentage of these windows . . . are in need of any kind of immediate repair." *Id.* The Court concluded that "only $64,000 in repairs

8

are really necessary to put this property into marketable
condition," resulting in a final value of $466,000. *Id.*

From that value, the Court deducted the mortgage debt of
$320,000, a real estate commission of $25,000, and a buyer
concession of $15,000, which left $106,000 in equity after sale.
*Id.* at 174. The Court also found that the two lots had a value
of at least $24,500. *Id.* at 175. Because the plan only funded
$45,500--far less than the equity in the Dunkirk home plus the
value of the lots--the Court denied confirmation.[9] *See id.* at
174-75, 177.

On April 8, 2013, Ms. Bulmer filed a motion to reconsider
the Court's order denying confirmation. ECF No. 1-2 at 1-2. On
May 2, 2013, the Court denied the motion to reconsider. ECF No.
1-2. On May 13, 2013, Ms. Bulmer filed a notice of appeal of
the Bankruptcy Court's denial of her motion to reconsider. ECF
No. 1. She presented the following issues for appeal: (1)
whether Judge Rice clearly erred in relying on Watson's
testimony when he was not admitted as an expert, and on Watson's
appraisal exhibits which were not admitted into evidence, to
determine the value of the Dunkirk home; and (2) whether Judge

---

[9] In reaching this conclusion, Judge Rice found that Ms. Bulmer's
testimony should be given no weight, because he "[found] a lot
of her answers evasive, uncertain and lacking in credibility
unless it seems obvious that they are questions that . . . are
in her best interest." ECF No. 16 at 172-73.

Rice clearly erred in finding that the Dunkirk home had $106,000 in non-exempt value. ECF No. 4-8 at 1.

On June 11, 2013, Judge Rice held a second hearing (the "June hearing") after which he entered orders granting the Trustee's motion to convert Ms. Bulmer's bankruptcy to Chapter 7 and denying Ms. Bulmer's motion to stay his rulings from the March hearing pending appeal. *See* ECF No. 17 at 1, 17, 25. Judge Rice found that Ms. Bulmer was not entitled to a stay pending appeal because, among other reasons: (1) she was not likely to succeed on the merits of an appeal which primarily challenged evidentiary rulings; (2) Mr. Bulmer, and Ms. Bulmer's other creditors, were "being harmed by the continuing delay and the debtor's persistence in [non-confirmable] plans;" and (3) the public interest favored Mr. Bulmer collecting on a valid judgment obtained in a domestic relations case. *See id.* at 18-22.

Judge Rice also concluded that there was cause to convert the case to Chapter 7, because of "the continuing delay and disagreements about when and how if ever to pay . . . the claim of Mr. Bulmer." *See id.* at 25. He held that it was "in the interest of creditors" to allow a disinterested Chapter 7 trustee to sell the Dunkirk home if the trustee concluded, as

Judge Rice had, that the home had significant equity.[10] *See id.*
at 26. In the alternative, if the Chapter 7 trustee concluded
that the Dunkirk home was "worth as little as Ms. Bulmer
claims," then the estate had no assets and the "Chapter 7 case
will be over very shortly." *See id.*

On June 25, 2013, Ms. Bulmer filed an amended notice of
appeal which challenged Judge Rice's June 11, 2013 orders. ECF
No. 10 at 1.

On October 10, 2013, this Court denied the Trustee's motion
to dismiss Ms. Bulmer's original appeal. ECF No. 14. The same
day, the Trustee filed a motion to reconsider.[11] ECF No. 18. On
October 25, 2013, Ms. Bulmer filed a brief in support of her
appeal. ECF No. 19. On November 13 and 15, 2013, Mr. Bulmer
and the Trustee filed briefs in opposition. ECF Nos. 20, 21.

---

[10] At the June hearing, Ms. Bulmer's counsel acknowledged that,
"under the valuation of the property that is currently here,"
Ms. Bulmer could not offer a feasible Chapter 13 plan. *See* ECF
No. 17 at 24.

[11] The Trustee moved for reconsideration of this Court's order on
the ground that she had filed a transcript of the March hearing
on the Court's docket contemporaneously with her motion to
reconsider, and "[o]ne of the reasons set forth for the denial"
of her motion to dismiss "is the failure of any of the parties
to file" this transcript. ECF No. 18 at 1. Although the Court
ordered Ms. Bulmer to file this transcript in its October 10,
2013 opinion to enable its consideration of her appeal, the
failure to file the transcript was not one of the grounds on
which the Court denied the Trustee's motion to dismiss. *See* ECF
No. 14 at 6-7 (denying motion because "dismissal is too harsh a
sanction" under the circumstances). Accordingly, the Trustee's
motion to reconsider will be denied.

II. Analysis

A. Standard of Review

A district court reviews a bankruptcy court's findings of fact--"whether based on oral or documentary evidence"--for clear error; conclusions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *Nesse v. IRS of the United States,* 305 B.R. 645, 647 (D. Md. 2004) *(citing Canal Corp. v. Finnman,* 960 F.2d 396, 399 (4th Cir. 1992); *Traveler's Ins. Co. v. Bryson Prop., XVIII*, 961 F.2d 496, 499 (4th Cir. 1992)). Factual findings are "clearly erroneous when although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985). When "two permissible views of the evidence" exist, the factfinder's choice of one of those views is not clearly erroneous. *Id.* at 574, 1511. The reviewing court may not reverse merely because it would have decided the case differently, *see id.* at 573, 1511, and must give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses," *In re Brasington*, 274 B.R. 159, 162 (D. Md. 2002) *aff'd,* 46 F. App'x 198 (4th Cir. 2002) *(quoting* Fed. R. Bankr. P. 8013).

B. Denial of Confirmation

In a Chapter 13 bankruptcy, a debtor with regular income may "repay or discharge certain debts after making payments to creditors for a specified commitment period, generally three to five years." *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013) (*citing* 11 U.S.C. §§ 1301-1330). Under 11 U.S.C. § 1325, the bankruptcy court must confirm a proposed Chapter 13 plan if it meets several criteria, including that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 . . . on such date." § 1325(a)(4); *Mort Ranta*, 721 F.3d at 253.

In other words, the plan must pass "the best interests of the creditors test," that "unsecured creditors . . . receive no less in a Chapter 13 proceeding than they would in a Chapter 7 liquidation proceeding." *In re Solomon*, 67 F.3d 1128, 1132 (4th Cir. 1995) (*citing* § 1325(a)(4)). A bankruptcy court's findings whether the plan is in the best interests of the creditors are reviewed for clear error. *See In re Travelstead*, 227 B.R. 638, 654 (D. Md. 1998) (*citing Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)); *see also Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 219 (4th Cir. 1994) ("[V]aluation is a question of fact, and can be overturned on

appeal only if clearly erroneous."). Value estimates in bankruptcy do not have a *res judicata* effect in subsequent hearings. *In re Midway Partners*, 995 F.2d 490, 494 (4th Cir. 1993).

Ms. Bulmer contends that the Bankruptcy Court clearly erred when "it made a determination that the Debtor's home was valued at $530,000 when there was no evidence presented to support such a determination." ECF No. 19 at 4-5. She argues that "weigh[ing] the testimony of the Appellee's witnesses greater than those of the Appellant's experts [was] clearly erroneous," because Mr. Bulmer's witnesses were not admitted as experts and the documents supporting their testimony were not admitted into evidence. *Id.* at 5. In response, the Trustee argues that the Court must "afford[] great deference" to Judge Rice's opportunity "to judge the credibility of the witnesses before [him] and to assign the appropriate weight to the oral and documentary evidence presented by the witnesses." ECF No. 21 at 5. Mr. Bulmer contends that Ms. Bulmer's counsel "failed to object to . . . the appraiser's testimony . . . and is now barred from raising this issue on appeal." ECF No. 20 at 7.

Three witnesses testified about the value of the Dunkirk home. Ms. Bulmer testified that she believed the value of the Dunkirk home is $399,000. ECF No. 16 at 73. However, Judge Rice found that her testimony should be given no weight, because

14

he "[found] a lot of her answers evasive, uncertain and lacking in credibility." *Id.* at 172-73. Giving "due regard" to Judge Rice's opportunity to judge Ms. Bulmer's credibility, this finding is not clearly erroneous. *See* Rule 8013.

Valentine--who was qualified as an expert--opined that, based on her analysis of recent area home sales, the Dunkirk home is worth $399,000. ECF No. 16 at 42-44, 47-48. Documents supporting her analysis were admitted into evidence. *See id.* at 52. Watson testified that, based on his analysis of recent home sales and the overall market, the Dunkirk home is worth $530,000. *See id.* at 132-33, 142-43. Although Watson was not qualified as an expert, and the documents on which he relied were not admitted into evidence, Ms. Bulmer's counsel did not object to the content of Watson's testimony or his competence. *See id.* at 124-51. Ms. Bulmer may not raise these objections for the first time on appeal. *See Travelstead*, 227 B.R. at 654; *see also Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 699 (E.D.N.C. 2009) ("Arguably, by failing to challenge the competence or qualification of Appellee's witnesses, SunTrust essentially conceded their qualifications.").

Judge Rice found that the valuation testimony of Watson-- who testified that he had about 25 years of experience in real estate appraisal and had been qualified as an expert in the last trial between the Bulmers--merited greater weight than that of

15

Valentine--a real estate agent with five years of experience. *See* ECF No. 16 at 39-40, 125-27, 172. Although Watson's written appraisals were not admitted into evidence, in his testimony, Watson described in detail how he determined the value of the Dunkirk home.[12] *See, e.g.*, *id.* at 127-29, 131-33. Thus, there is sufficient evidence in the record to support Watson's valuation of the Dunkirk home, and Judge Rice did not clearly err in crediting Watson's testimony.[13] *See Leber v. United*

_____

[12] Further, even if Judge Rice had improperly relied on the unadmitted appraisals, "to warrant reversal, the error must have been prejudicial: It must have affected the outcome of the bankruptcy court proceedings." *In re Andre Chreky, Inc.*, 448 B.R. 596, 608-09 (D.D.C. 2011) (*quoting Czekalski v. LaHood,* 589 F.3d 449, 453 (D.C. Cir. 2009)); *see also Stevens v. Showalter*, 458 B.R. 852, 855 (D. Md. 2011) ("harmless error doctrine applies to a district court's review of the decision of a bankruptcy court") (*citing Travelstead*, 227 B.R. at 644). Judge Rice stated that his finding that the Dunkirk home was worth $530,000 was "based upon Mr. Watson's testimony." ECF No. 16 at 173. Because Judge Rice would have reached the same conclusion on the Dunkirk home's value relying only on Watson's testimony, any error that occurred in also relying on the appraisal exhibits was harmless. *See Andre Chreky*, 448 B.R. at 609 (finding that reliance on an unadmitted exhibit was harmless error, because "reliance on this exhibit was only one reason for approving the settlement" and the bankruptcy judge would have reached the same conclusion without relying on it).

[13] Ms. Bulmer argues that Judge Rice also clearly erred in finding that the Dunkirk home was worth $530,000, because at the 2011 hearing on Ms. Bulmer's first bankruptcy petition, he found that the home was worth only $460,000. *See* ECF No. 19 at 5. However, because valuation findings do not have *res judicata* effect in subsequent hearings, Judge Rice was required to make an "independent evaluation" of the Dunkirk home's value at the March hearing on Ms. Bulmer's third bankruptcy petition. *See Midway Partners*, 995 F.2d at 494 ("[A] bankruptcy court faced with the need to re-value collateral should not mechanically

*States*, 37 F.3d 1494, at *1 (4th Cir. 1994) ("[W]hen a trial

judge's finding is based on its decision to credit the testimony

of one of two or more witnesses, each of whom has told a

coherent and facially plausible story that is not contradicted

by extrinsic evidence, that finding, if not internally

inconsistent, can virtually never be clear error.") (*citing*

*Cicero v. United States,* 812 F.2d 1040, 1042 (7th Cir. 1987));

*Suntrust Bank*, 406 B.R. at 697-700 (bankruptcy court did not

clearly err in giving more weight to lay testimony than expert

testimony).[14]

Further, Judge Rice's finding that the value of the Dunkirk

home should be adjusted by the $64,000 in required repairs to

put it "into marketable condition" is also supported by the

record. ECF No. 16 at 173. Grice testified that $104,624 in

repairs was necessary and that $52,700 of that amount was the

cost of replacing all 36 windows. *See id.* at 27, 31. Grice

---

apply the valuation determination in the earlier proceeding, but
should make an independent evaluation of the value of the
collateral.") (*quoting In re Snowshoe Co.,* 789 F.2d 1085, 1089
(4th Cir. 1986) (internal quotations and punctuation omitted)).

[14] *See also Andre Chreky*, 448 B.R. at 604-05 (Bankruptcy Judge
did not clearly err in finding settlement reasonable merely
because he solely relied on testimony, rather than documentary
evidence, because "[a] fact finder may . . . rely on both oral
and documentary evidence") (*citing* Rule 8013); *Ross v. Riggs
Nat. Bank of Washington, D.C.,* 199 B.R. 576, 578 & n.1 (E.D. Va.
1995) (no clear error in bankruptcy court finding based on
evidence that "should be noted . . . was not admitted at trial
as either evidence or an exhibit").

acknowledged, however, that only 15-20 percent of the windows had failed. *See id.* at 35. Watson testified that replacing the windows that had not failed was not necessary to sell the home. *See id.* at 149. Accordingly, Judge Rice deducted some of the cost of window replacement from Grice's estimates to arrive at the $64,000 figure. *See id.* at 173-74. As Judge Rice was presented with two permissible views of the evidence of needed repairs, his choice of one of those views is not clearly erroneous. *See Anderson*, 470 U.S. at 574, 105 S. Ct. at 1511.

Ms. Bulmer does not challenge Judge Rice's deductions of $320,000 in mortgage debt, a real estate commission of $25,000, or a buyer concession of $15,000 from the Dunkirk home's adjusted value or the valuation of the two lots at $24,500. *See* ECF No. 16 at 174-75. Accordingly, the Bankruptcy Court did not clearly err in finding that unsecured creditors would recover more from a liquidation of the estate in a Chapter 7 bankruptcy- -$106,500 in equity from the sale of the Dunkirk home plus the lots' value of $24,500--than was funded in Ms. Bulmer's Chapter 13 plan. The Bankruptcy Court's denial of Ms. Bulmer's motion to reconsider its denial of her Chapter 13 plan under § 1325(4) will be affirmed.[15]

---

[15] Even if the Bankruptcy Court had clearly erred in finding that the proposed plan failed the best interests of the creditors test, Judge Rice found that Ms. Bulmer's proposed plan must also be denied under § 1325(3) because it was not filed in good

C. Conversion to Chapter 7

Ms. Bulmer also appeals the Bankruptcy Court's order

converting her bankruptcy case from Chapter 13 to Chapter 7,[16]

arguing only that the order was "clearly erroneous." *See* ECF

No. 19 at 8. The Trustee argues that "[t]he transcripts

demonstrate that the Bankruptcy Judge['s] . . . conclusion[s

are] well supported by the record." *See* ECF No. 21 at 5. Mr.

Bulmer questions the purpose of this appeal, because Ms. Bulmer

did not file an amended Chapter 13 plan after the March hearing.

*See* ECF No. 20 at 7.

Under 11 U.S.C. § 1307(c)(1), on the trustee's or another

party's motion, "and after notice and a hearing," the bankruptcy

_____

faith. *See* ECF No. 16 at 171-72. A bankruptcy judge's finding
of bad faith is reviewed under the clearly erroneous standard.
*In re Hebb*, 53 B.R. 1003, 1006-07 (D. Md. 1985). Ms. Bulmer has
not challenged Judge Rice's factual findings of her bad faith.
Thus, the order denying confirmation of Ms. Bulmer's proposed
Chapter 13 plan could also be affirmed on this alternative
ground. *See Solomon*, 67 F.3d at 1133-34 ("Whether [debtor's]
Chapter 13 plan will be confirmed hinges upon a finding by the
bankruptcy court . . . that the debtor has proposed this plan in
good faith.").

[16] 28 U.S.C. § 158(a) grants district courts appellate
jurisdiction over "final judgments, orders, and decrees . . .
and, with leave of the court . . . interlocutory orders and
decrees" of bankruptcy judges. Conversion orders are
"immediately appealable" either as final orders or under the
collateral order doctrine. *See In re Fraidin*, 110 F.3d 59, at
*1 (4th Cir. 1997) (*citing In re Looney,* 823 F.2d 788, 791 (4th
Cir.1987)); *Halls v. Office of U.S. Tr.*, CA 2:12-2120-CWH-BM,
2012 WL 6927993, at *1 (D.S.C. Dec. 21, 2012) *report and
recommendation adopted,* CIV.A. 2:12-02120, 2013 WL 271675
(D.S.C. Jan. 24, 2013).

court may dismiss the Chapter 13 case or convert it to a Chapter 7 case "for cause including [*inter alia*] . . . unreasonable delay by the debtor that is prejudicial to creditors." If the bankruptcy court determines that sufficient cause exists, then it has discretion whether to convert the case or dismiss based on the "best interests of creditors and the estate." *See* § 1307(c); *Fraidin*, 110 F.3d at *2. The bankruptcy court's decision to convert a case from Chapter 13 to Chapter 7 is reviewed for abuse of discretion. *See In re Jackson v. U.S., On Behalf of I.R.S.*, 131 F.3d 134, at *4 (4th Cir. 1997) ("When determining whether cause exists to warrant a dismissal or conversion, a bankruptcy court retains 'broad discretion.'"); *In re Mitrano*, 472 B.R. 706, 708 (E.D. Va. 2012), *appeal dismissed* (June 15, 2012). A reviewing court may find an abuse of discretion only if it has a "definite and firm conviction" that the bankruptcy court "committed a clear error of judgment." *Jackson*, 131 F.3d at *4 (*quoting In re Posner,* 700 F.2d 1243, 1246 (4th Cir. 1983) (internal quotations omitted)).

Here, almost six months passed between the date of Ms. Bulmer's third bankruptcy petition and the deadline for her to file an amended plan. *See* ECF Nos. 1-1 at 1, 4-10 at 12. Ms. Bulmer failed to file a confirmable plan during this time, and at the June hearing indicated that it was unlikely she could do so. *See* ECF No. 17 at 24-25. Also, Ms. Bulmer had filed two

20

substantially similar plans in previous bankruptcy petitions that were not confirmed. *See* ECF No. 16 at 89-91. Accordingly, on this record, this Court cannot find that the Bankruptcy Court abused its discretion in holding that the debtor's delay in filing a confirmable Chapter 13 plan provided sufficient cause to convert the case to Chapter 7 under § 1307(c)(1). *See Jackson*, 131 F.3d at *4 (emphasizing the bankruptcy court's broad discretion in determining if cause exists for dismissal or conversion, especially when the bankruptcy court retains jurisdiction rather than dismisses the case); *In Re Sawyer*, No. 3:05CV644-HEH, 2005 WL 5864795, at *5 (E.D. Va. Nov. 25, 2005) (affirming finding of unreasonable delay when debtor failed to file a confirmable plan in eight months, after being given many opportunities to do so, and "gave no indication that she would actually file a confirmable plan").

Further, the Bankruptcy Court did not abuse its discretion by finding that conversion was in the best interests of the creditors and the estate because the Dunkirk home is a potentially valuable asset and appointment of a disinterested Chapter 7 trustee would facilitate final resolution of the case. *See* ECF No. 17 at 25-26; *In re Jensen*, 425 B.R. 105, 111 (Bankr. S.D.N.Y. 2010) (finding conversion from Chapter 13 to Chapter 7 appropriate because debtor had potentially valuable assets and, in light of debtor's unreasonable delays, appointment of a

disinterested trustee would ensure their prompt liquidation) (*citing In re Blaise,* 219 B.R. 946, 948, 951 (2d Cir. BAP 1998) (affirming conversion when, *inter alia,* the debtor "persisted in delaying the sale of property, the proceeds of which were to be used to pay creditors")). Accordingly, the order of the Bankruptcy Court converting Ms. Bulmer's bankruptcy case from Chapter 13 to Chapter 7 will be affirmed.

D. Stay Pending Appeal

Ms. Bulmer also appeals the Bankruptcy Court's order denying a stay pending appeal of Judge Rice's rulings from the March hearing which resulted in denial of confirmation of her proposed Chapter 13 plan. *See* ECF Nos. 10 at 1, 19 at 6-9. Because "a stay pending appeal dissolves when the appeal is decided," this appeal will be dismissed as moot. *See In re James River Associates*, 148 B.R. 790, 798 (E.D. Va. 1992) (*citing F.T.C. v. Food Town Stores, Inc.,* 547 F.2d 247, 249 (4th Cir. 1977)).

III. Conclusion

For the reasons stated above, the orders of the Bankruptcy Court will be affirmed.

_2/28/14_
Date

William D. Quarles, Jr.
United States District Judge

22